# COLLECTION POLICY & PROCEDURES
# FOR THE
# SHEET METAL WORKERS LOCAL UNION NO. 20 WELFARE AND BENEFIT FUND

In order to clarify the rights and responsibilities of all contributing Employers, the Board of Trustees of the Sheet Metal Workers' Local No. 20 Welfare and Benefit Fund ("Welfare Fund") hereby adopts this Statement of Policy, which supersedes and replaces all prior collection and audit policies for the Fund. The Trustees acknowledge the requirements of Prohibited Transaction Exemption 76-1 regarding the determination of uncollectable funds, agreements for payment of less than the full amount owing, and agreements for payment of amounts owing over a period of time. The intent of the Board is to comply at all times with the mandates of the Employee Retirement and Income Security Act of 1974 ("ERISA"), as amended, and the Internal Revenue Code. This Statement of Policy shall be administered and interpreted with such intent.

## CONTRIBUTIONS

1. Employer reports of hours worked and accompanying contributions required by the collective bargaining agreement shall be remitted to the Fund Administrator no later than the Due Date. The Due Date for contributions to the Welfare Fund is the 25th day of the month following the month in which the work was performed, or a different date, if specified in the Employer's collective bargaining agreement. If the Due Date is not a regular business day, then contributions are due on the next regular business day.

2. If a required report and/or contribution is not postmarked or received on or before the Due Date, the contribution shall then be deemed delinquent as of the Due Date.

3. An Employer shall also be deemed delinquent if:
   a. Contributions are not made on behalf of all the employees for whom contributions are required by the collective bargaining agreement; or,
   b. Contributions are not properly computed according to the required contribution formula specified in the collective bargaining agreement; or,
   c. No monthly report of hours worked is submitted; or,
   d. The Employer fails to produce records requested by the Fund, fails to maintain adequate payroll records, or refuses to permit a payroll compliance audit.

4. If an Employer is delinquent, the Trustees may infer the Employer's contribution liability based upon reasonable assumptions. It shall be reasonable for the Trustees to assume that the number of employees last reported by the Employer each performed 40 hours of covered work per week.

## LIQUIDATED DAMAGES

5. Delinquent contributions impose expense and financial harm upon the Fund which can be difficult or impractical to exactly calculate. Therefore, as a reasonable approximation of such harm, liquidated damages equal to 15 percent of the contribution due will be assessed if payment in full is not received or postmarked by the last day of the month following the Due Date.

6. The assessment of liquidated damages may be deferred until the Fund Administrator has received a contribution report or other basis for determining with reasonable accuracy the amount of the employer contribution due. The Trustees may assess liquidated damages based upon an Employer contribution liability which has been inferred in accordance with paragraph 4 of this Policy.

7. An Employer may appeal the assessment of liquidated damages to the Trustees. All appeals must be in writing and must state the reason(s) for such appeal. Except as stated in the following paragraph, appeals may be granted at the sole discretion of the Trustees and on a case-by-case basis. Such appeals will not act to delay any legal or equitable action deemed necessary by the Trustees.

8. An Employer which has not been late in the payment of its required contributions for at least the 12 consecutive month period immediately prior to the Due Date of a late contribution shall be granted, at its written request, a waiver of liquidated damages and interest for such delinquent contribution, provided, however, that the waiver shall be conditioned on the Employer remaining current in its contributions for the immediately ensuing 18 consecutive month period following the granting of the waiver. If the employer is late in the payment of a contribution during that ensuing consecutive 18-month period, the interest and liquidated damages thus waived shall be reinstated and be due and payable as if never waived.

## INTEREST

9. Any contribution which is delinquent will accrue simple interest at the rate of 1.5% percent per month, calculated from the first day of the month following the due date through the date that payment of the delinquent contribution is postmarked or received by the Fund Administrator.

## DELINQUENCY AND COLLECTIONS PROCEDURE

10. As soon as possible following the due date, the Fund Administrator will send a letter to delinquent Employers by regular mail that advises of the delinquency and requests a copy of the Employer's monthly remittance report.

11. If no payment is made in response to the Administrator's delinquency letter, the Fund Administrator may refer the matter to Fund Counsel for appropriate action. As a general rule, all contribution delinquencies which remain unpaid within 30 days after the due date and unpaid assessments of liquidated damages and interest in excess of $1,000 will be referred to Fund Counsel for appropriate collection efforts. If referral to legal counsel is required to collect delinquent contributions, the Employer may be assessed attorney fees and costs.

12. Payments received from an Employer will be applied in the following order: contributions, beginning with the oldest unpaid work month; interest; costs and attorney's fees; liquidated damages. If the Fund Administrator receives a payment from an Employer which is insufficient to cover all contributions owed to all affiliated funds, the monies received may be distributed among the affected funds on a pro-rata basis. The Fund Administrator is not bound by an Employer's intended application of a payment, if doing so conflicts with the terms of this Policy.

13. The Trustees will meet regularly to review collection activity. Counsel will provide updates to the Trustees at each meeting of the Trustees. The Fund Administrator will keep records of all delinquencies and report to the Trustees at each regular meeting.

14. The Trustees may elect to bring legal action at any time and may exercise any legal avenue for recovery including, but not limited to: bond claims; liens; administrative actions; ERISA claims; and any other right granted under state or federal law. In the event legal action is necessary, the Employer will be solely responsible for unpaid contributions, liquidated damages, interest, professional fees, and such other legal or equitable relief as deemed appropriate.

## EMPLOYER AUDITS

15. The Trustees will establish a program of random audits of Employers and may join with other SMART funds on a joint audit program. It is the general intention of the Trustees to audit each employer every five years.

16. Employers may also be audited for cause at the discretion of the Trustees or an Audit Committee. An audit initiated for cause may cover any period of time deemed appropriate and necessary by the Trustees.

17. Employers will be notified in writing that an auditor has been authorized to conduct a payroll audit. Such notice will include the name of the auditor, the date for which the audit is scheduled, and the records to be produced. The auditor may make the initial contact on behalf of the Fund to schedule the audit. The Employer shall produce all records requested by the auditor in a timely manner and shall otherwise cooperate in enabling the auditor to complete the audit, including but not limited to the following:

    a. Payroll records detailing hours worked and paid, gross wages, rate of pay, deductions, and net pay.
    b. Federal Form 941 quarterly payroll tax returns.
    c. Federal Forms W-2, W-3, 1099, and 1096.
    d. State quarterly unemployment compensation reports.
    e. Employer copies of monthly contribution reports for all fringe benefit funds.
    f. General ledger and cash disbursement records, including backup documentation such as invoices.
    g. Pertinent personnel information, such as hire and termination dates.
    h. Federal income tax returns, such as Form 1120 for corporations.

18. If an Employer does not fully cooperate with the Fund Auditor, the Auditor or Administrator may refer the matter to Fund Counsel for appropriate action to obtain the Employer's compliance. If the assistance of Fund Counsel becomes necessary to obtain cooperation with an audit, the Employer shall be liable for the payment of the Funds' reasonable attorney's fees and costs, regardless of the outcome of the audit.

19. At the conclusion of the audit, the Fund Administrator will notify the Employer in writing of the auditor's findings. Copies of the audit results may also be provided to Fund Counsel. If the Employer disputes the audit findings, the Administrator shall present the matter to the Trustees for review at their next regularly scheduled meeting.

## AUDIT BILLING AND ASSESSMENTS

20. If an audit discloses a discrepancy, the Employer will be responsible for the costs of the audit. However, for routine audits where the discrepancies are apparently inadvertent, the cost of the audit may be waived by the Trustees following prompt payment of the contributions. An Employer may also be required to pay these costs in the event of its refusal to permit an audit or if the payroll auditor believes that the audited Employer has unduly prolonged the audit process. This is in addition to all other costs of collection, late payment assessments, late report filing fees, and attorney fees and costs, as provided in this Statement of Policy.

21. If a routine random audit discloses delinquent contributions, the Fund Administrator will bill the Employer for delinquent contributions disclosed by audit and costs. Payment is due 30 days from the billing date. If payment is not received, the Fund Administrator will additionally assess liquidated damages and interest in accordance with this Policy, and may refer the matter to Fund Counsel for appropriate collection efforts.

22. If an audit for cause discloses delinquent contributions, the Fund Administrator will bill the Employer for delinquent contributions, costs, liquidated damages, and interest. Payment is due 30 days from the billing date. If payment is not received, the Fund Administrator may refer the matter to Fund Counsel for appropriate collection efforts.

## REFUND OF EMPLOYER OVERPAYMENTS

23. Consistent with Section 403(c) of ERISA, any Employer that has made an overpayment to the Fund as the result of a mistake of fact or law may submit a written request for a refund to the Board of Trustees. The Fund Administrator will promptly investigate the alleged overpayment and provide a summary of its findings to the Board of Trustees. The Trustees may vote to refund any mistaken contributions made by the Employer in the 24 months immediately preceding the date the Employer provided written notice to the Fund Administrator. Should a request for refund be approved by the Trustees, the return of overpayment(s) will occur within the six months immediately following the date the Fund Administrator determines that an overpayment was made. No interest shall accrue on the amount of the overpayment.

24. Any benefits paid, premiums paid, and/or administrative expenses required to calculate the amount to be refunded shall be deducted from the amount of erroneous contributions. No refund shall be made unless the Employer first executes a full release of all claims and an agreement to indemnify, defend, and hold harmless the Fund, the Trustees, fiduciaries and agents, from any and all claims relating to the alleged mistaken contributions.

25. Nothing herein shall prohibit the Fund Administrator from making routine adjustments to correct errors in monthly remittance reports and provide credits and/or refunds to Employers.

## AMENDMENT

26. The Board of Trustees may amend this Policy at any time.

**IN WITNESS WHEREOF**, the foregoing policy has been adopted by the Board of Trustees for the Sheet Metal Workers' Local Union No. 20 Welfare and Benefit Fund this 19th day of September, 2025, to be effective from said date.

**For the Fund:**

*Trent Todd*
Trent Todd (Sep 19, 2025 13:29:02 EDT)

**CHAIRMAN**
Trent Todd

Dated: 9/19/25

*Joseph Lansdell*
Joseph Lansdell (Sep 19, 2025 13:26:24 EDT)

**SECRETARY**
Joseph Lansdell

Dated: 9/19/25

# SM 20 HW Collection Policy - (clean)

Final Audit Report                                                                 2025-09-19

| | |
|---|---|
| Created: | 2025-09-19 |
| By: | Kate Prenatt (kate.prenatt@fringebenefitlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAqbWbVMQOgjDRCxXgWnE0D8OqVnZGYGAi |

## "SM 20 HW Collection Policy - (clean)" History

- Document created by Kate Prenatt (kate.prenatt@fringebenefitlaw.com)
  2025-09-19 - 5:21:18 PM GMT

- Document emailed to Trent Todd (ttodd@smw20.com) for signature
  2025-09-19 - 5:21:22 PM GMT

- Document emailed to Joseph Lansdell (josephlansdell@poyntersheetmetal.com) for signature
  2025-09-19 - 5:21:22 PM GMT

- Email viewed by Joseph Lansdell (josephlansdell@poyntersheetmetal.com)
  2025-09-19 - 5:25:05 PM GMT

- Document e-signed by Joseph Lansdell (josephlansdell@poyntersheetmetal.com)
  Signature Date: 2025-09-19 - 5:26:24 PM GMT - Time Source: server

- Email viewed by Trent Todd (ttodd@smw20.com)
  2025-09-19 - 5:28:41 PM GMT

- Document e-signed by Trent Todd (ttodd@smw20.com)
  Signature Date: 2025-09-19 - 5:29:02 PM GMT - Time Source: server

- Agreement completed.
  2025-09-19 - 5:29:02 PM GMT

Adobe Acrobat Sign